UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
BEAR, STEARNS FUNDING, INC.,                          :
                                                      :                    03 Civ. 8259 (CSH)
                              Plaintiff,              :
                                                      :
            -against-                                 :              MEMORANDUM OPINION
_____            :                     AND ORDER
INTERFACE GROUP-NEVADA, INC.,                         :
                                                      :
                              Defendant.              :
------------------------------------------------------------- x

HAIGHT, Senior District Judge:

      Plaintiff Bear, Stearns Funding, Inc. ("Bear Stearns") moves to strike the jury demand
defendant Interface Group-Nevada, Inc. ("Interface") included in its answer and counterclaims. The
particulars of this complex commercial transaction and resulting energetic litigation are described
in detail in the Court's opinion deciding the parties' cross-motions for summary judgment, reported
at 2007 WL 1988150 (S.D.N.Y. July 10, 2007), familiarity with which is assumed. Those particulars
are recounted below only to the extent necessary to explain the Court's resolution of the present
motion.

      Bear Stearns' motion to strike Interface's jury demand has been fully briefed, including the
filing, with the Court's permission, of sur-reply briefs, followed by a further exchange of letters by
counsel. The motion is now fully submitted.

      For the reasons below, Bear Stearns' motion is granted.[1]

## I. BACKGROUND

      In June 2001, the parties entered into a Loan Agreement pursuant to which Bear Stearns
loaned $141 million to Interface, secured by a mortgage encumbering the Sands Expo and

---

[1] This opinion resolves Bear Stearns' motion, filed on July 31, 2006, which is document
55 on the docket sheet.

Convention Center, located in Las Vegas, Nevada.  2007 WL 1988150, at *1.  The Loan Agreement spawned a number of other interrelating documents: the Original Sharing Agreement, the Post-Closing Cooperation Letter, and the Revised Sharing Agreement.  *Id*. at *2-4.  They are collectively described by their terms as "the Loan Documents."  The exchange of claims and counterclaims in the pleadings implicates them all.

Section 10.7 of the Loan Agreement contains a waiver by Interface, the "Borrower," of its right to trial by jury.  That waiver appears in the Loan Agreement in capitalized boldface.  In order properly to set the stage for this opinion, I set forth the language in the same fashion:

> **BORROWER [INTERFACE] HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THE LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY BORROWER, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE.  LENDER [BEAR STEARNS] IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY BORROWER.**

It is hard to imagine a more complete, all-encompassing, repetitive waiver of a right to trial by jury.  One is reminded of Lewis Carroll's *The Hunting of the Snark*: "What I tell you three times is true."  This language could only have been written a lawyer (or a squad of them); and, as one would expect, the parties were represented by eminent counsel during the negotiation and drafting of the Loan Agreement and its satellite agreements.  Bear Stearns was represented and advised by

the firm of Cadwalader, Wickersham & Taft.  Interface was represented and advised by the firm of Paul, Weiss, Rifkind, Wharton & Garrison.

Presumably, parties entering into such contracts hope and expect that everyone will live in contractual harmony and amity, to the eventual economic benefit of all.  But that is not always the way, at least in this world.  Disputes broke out between Bear Stearns and Interface.  On October 17, 2003, Bear Stearns filed a complaint against Interface, alleging that Interface owed it over $1 million under the Revised Sharing Agreement, one of the Loan Documents.  The Cadwalader firm drafted the pleading, and has continued to represent Bear Stearns throughout the case.  On December 2, 2003, Interface filed an answer, affirmative defenses, and counterclaims.[2]  Interface was no longer represented by the Paul Weiss firm.  Its responsive pleading was drafted by the firm of Wasserman Grubin & Rogers, which continues to represent Interface.

Interface's answer, affirmative defenses, and counterclaims ends with a "Demand for Jury Trial" which states: "Pursuant to Fed. R. Civ. P. 38(b), Interface demands a jury trial on all issues raised by the Complaint and the defendant's counterclaims."  It does not appear from the record on this motion whether the Wasserman firm attorneys, in making that jury demand on behalf of Interface,  were aware of or gave any consideration to the fact that in the Loan Agreement, negotiated on Interface's behalf by the Paul Weiss firm, Interface had waived its right to make such a demand.

Bear Stearns did not react immediately to Interface's pleading by moving to strike the jury demand on the ground of waiver.  The parties embarked upon extensive discovery.  Witnesses were deposed.  Documents were produced.  On July 31, 2006, Bear Stearns filed a motion for summary judgment, coupled with a motion to strike Interface's jury demand.  Interface cross-moved for

---

[2]  For a summary of the parties' claims, *see* 2007 WL 1988150, at *9-10.

summary judgment. The Court first considered the summary judgment motions and held Bear Stearns' motion to strike the jury demand in abeyance, since the resolution of the summary judgment motions might moot that motion. The Court decided the summary judgment motions in the opinion previously cited. Certain issues remain to be tried. Disputes have arisen as to whether additional discovery should be allowed. Interface has filed objections to Magistrate Judge Peck's September 25, 2007 Order addressing that issue. Those objections are pending before this Court. No trial date has been set.

In these circumstances, the Court should now decide Bear Stearns' motion to strike Interface's jury demand. This opinion does so.

## II. DISCUSSION

The Court's decision on the cross-motions for summary judgment leaves for trial the claims and issues summarized at 2007 WL 1988150, at *31-32. "[T]he right to a jury trial in the federal courts is to be determined as a matter of federal law." *Morgan Guaranty Trust Co. of New York v. Crane*, 36 F. Supp. 2d 602, 603 (S.D.N.Y. 1999) (citing *Simler v. Conner*, 372 U.S. 221, 222 (1963)). This principle applies to diversity cases such as the case at bar; the district court's jurisdiction in *Morgan Guaranty* was based on the parties' diverse citizenship. Because the instant claims are at law rather than in equity, the Seventh Amendment applies, and the right to a jury it confers "is fundamental, and there is a presumption against its waiver." *Morgan Guaranty*, 36 F. Supp. 2d at 603 (citing *Nat'l Equip. Rental, Ltd. v. Hendrix*, 565 F.2d 255, 258 (2d Cir. 1977)). Nevertheless, contract provisions waive the right if they constitute a "knowing, voluntary, intentional waiver." *Morgan Guaranty*, 36 F. Supp. 2d at 603 (citations omitted). As Judge Stein observed in that case, "jury trial waivers are common in loan agreements and loan guarantees, and these are

regularly enforced." *Id*. (citations omitted) (the case at bar involves a loan agreement). "The factors a court must consider in determining whether a contractual waiver of a right to a jury trial was entered into knowingly and voluntarily include: 1) the negotiability of contract terms and negotiations between the parties concerning the waiver provision; 2) the conspicuousness of the waiver provision in the contract; 3) the relative bargaining power of the parties; and 4) the business acumen of the party opposing the waiver." *Morgan Guaranty*, 36 F. Supp. 2d at 604 (citation omitted). "Federal courts apply federal law in determining whether a contractual jury trial waiver is enforceable." *Tracinda Corp. v. DaimlerChrysler AG*, — F.3d —, 2007 WL 2701965, at *7 (3d Cir. Sept. 18, 2007). *See also Schappert v. Bedford, Freeman & Worth Publ'g Group*, No. 03 Civ. 0058, 2004 WL 1661073, at *11 (S.D.N.Y. July 23, 2004) ("Whether the right to a jury has been waived is governed by federal law.") (citations omitted).

Applying these principles to the case at bar, it requires no lengthy analysis to demonstrate that Bear Stearns, seeking to enforce Interface's contractual waiver of its right to a jury trial, has satisfied all four elements articulated in *Morgan Guaranty*. The record shows that 1) the terms of the Loan Agreement and its accompanying agreements were negotiable and, indeed, extensively negotiated by and between able counsel for Bear Stearns and Interface, undoubtedly acting upon the instructions of their clients, with no suggestion that the jury waiver provision was singled out for stonewalling or intransigence; 2) the bold-face, capitalized waiver provision was sufficiently conspicuous; 3) there was no inequality of bargaining power between these two major and well-funded players in the business world; and 4) the principals of the parties engaged in the transactions were sophisticated, experienced individuals, with business acumen to spare. The evidence compels the conclusion that Interface knowingly, intentionally, and voluntarily entered into a contract which

waived its right to trial by jury.

Thus, Interface has no basis upon which to attack the validity *ab initio* of its contractual jury trial waiver; and, in point of fact, Interface does not attempt to do so. Rather, Interface seeks to preserve the subsequent jury demand in its pleading by arguing that Bear Stearns waited too long to move to strike that demand: in other words, that by its inaction Bear Stearns waived Interface's waiver. I disagree.

This particular question is subsumed by Interface's claimed right to a jury trial. I continue to apply federal law. That is appropriate because jury trials in federal courts are governed by Rules 38 and 39 of the Federal Rules of Civil Procedure, and Rules 38(d) and 39(a) contain specific provisions with respect to waiving trial by jury.[3] While those Rules do not squarely address the timeliness of a motion to strike a jury demand a leading commentator has said:

> Parties have a great deal of latitude on the timing of motions to strike a jury demand. Because a court has the power to act sua sponte [to strike a jury demand] at any time, it follows that a court has the discretion to permit a motion to strike a jury demand at any time, even on the eve of trial.

8 James Wm. Moore et al., *Moore's Federal Practice* § 39.13[2][c] (3d ed. 2007) (footnote omitted).

---

[3] Rule 39(a) provides that where a party has demanded a jury trial pursuant to Rule 38, "[t]he trial of all issues so demanded shall be by jury, unless . . . (2) the court upon motion or on its own initiative finds that a right of trial by jury on some or all of these issues does not exist under the Constitution or statues of the United States." Courts have cited and applied this rule in decisions striking a jury demand because the right to a jury trial, having been contractually waived, no longer existed. *See, e.g., Tracinda*, 2007 WL 2701965, at *12 (finding motion to strike based on contractual waiver timely "[b]ecause a party may file motion to strike a jury demand at any time under Rule 39(a)"); *Great Earth Int'l Franchising Corp. v. Milks Dev.*, 311 F. Supp. 2d 419, 437 (S.D.N.Y. 2004) ("[I]n keeping with the policy expressed in the caselaw of favoring enforcement of jury waiver clauses, and to promote the orderly and efficient disposition of this case, I strike plaintiff's jury demand under Fed. R. Civ. P. 39(a), and rule that the case will proceed as a bench trial.").

The thrust of Interface's argument is that Bear Stearns delayed unreasonably in moving to strike the jury demand, and Interface was prejudiced by that delay. Those propositions will sound familiar to students of equity jurisprudence: Interface does not use the word, but its appeal is to the equitable doctrine of laches. In *Tracinda Corp.*, the Third Circuit rejected "Tracinda's alternative argument that the District Court should have barred DaimlerChrysler's motion to strike Tracinda's jury demand on the basis of laches." 2007 WL 2701965, at *10. The court noted: "In order to successfully assert the defense of laches, Tracinda must show (1) inexcusable delay by DaimlerChrysler, and (2) prejudice to Tracinda as a result of the delay." *Id.* (internal quotation marks and citations omitted). The court continued: "DaimlerChrysler's motion to strike came after the close of discovery, about six weeks before trial and approximately eight months after DaimlerChrysler filed its motion for summary judgment," and held:

> Because a party may file a motion to strike a jury demand at any time under Rule 39(a), we conclude that DaimlerChrysler did not commit inexcusable delay by filing its motion to strike after the close of discovery. Having reached this conclusion, we need not consider whether DaimlerChrysler's delay caused prejudice to Tracinda.

*Id*. at *12.

In the case at bar, Bear Stearns waited until the apparent end of discovery and then coupled its summary judgment motion with a motion to strike Interface's jury demand. This is a common enough practice. *See, e.g., Solutia Inc. v. FMC Corp.*, 456 F. Supp. 2d 429, 434 (S.D.N.Y. 2006) ("FMC moves for summary judgment on all claims, or, in the alternative, to strike Solutia's demand for a jury trial.").[4] It is perfectly sensible for a party in litigation to conduct discovery and then try

---

[4] Judge Pauley held in *Solutia* that "FMC's motion for summary judgment is granted in part and denied in part, and FMC's motion to strike Solutia's jury demand is granted." *Id*.

to make the case against him go away by moving for summary judgment, while also moving in the alternative, should the summary judgment motion fail and the case goes on, to strike a jury demand which his adversary had previously (and improperly if the right to a jury trial had been waived) included in a pleading. I agree with the Third Circuit's reasoning in *Tracinda*, which applies to this case *a fortiori*. In *Tracinda*, the defendant moved to strike plaintiff's jury demand eight months after defendant moved for summary judgment, and only six weeks before the trial date. The Third Circuit, construing Fed. R. Civ. P. 39, held that defendant not committed inexcusable delay in moving to strike the jury demand. In the case at bar, Bear Stearns coupled its motion to strike Interface's jury demand with its summary judgment motion, and no trial date has yet been set. Given those facts, Bear Stearns need not rely on the quoted statement in *Moore* that in federal practice, "a court has the discretion to permit a motion to strike a jury demand at any time, *even on the eve of trial*." (emphasis added).

In these circumstances of this case, and in the exercise of my discretion, I reject Interface's contention that Bear Stearns' motion to strike Interface's jury demand should be denied because the motion was made too late.

Having reached that conclusion, perhaps I need not consider whether this passage of time prejudiced Interface in any way; but I think it best to address that question as well. It is entirely clear that Interface cannot show the sort or degree of prejudice that would deprive Bear Stearns of the right to enforce Interface's contractual waiver of the right to a jury trial.

The case for Interface appears to be that Bear Stearns should have moved to strike Interface's jury demand immediately after Interface included that demand in its responsive pleading. Bear Stearns did not do so. As noted *supra*, the parties engaged in extensive discovery. Interface now

8

says it was prejudiced by Bear Stearns' delay in moving to strike the jury demand because during that period of time Interface "developed and applied its litigation strategy to discovery, motion practice, settlement negotiations, and initial trial preparations" on the assumption that the case would be tried to a jury. Def.'s Sur-Reply Br. at 4-5. Interface declines to provide "details concerning the prejudice to Interface" because that "would impinge upon Interface's rights under the attorney work-product privilege," but gives as examples "of the types of areas impacted: overall litigation strategy, selection of evidence and issues to focus on, selection of deponents, method of recording depositions, and extent of cross-examination to conduct at depositions, marshaling the facts for trial, and settlement position." *Id*. at 5 n.2. In all these areas, Interface contends that it proceeded on the assumption that there would be a jury trial and would be prejudiced by a bench trial.

There is no substance to these assertions of unfair prejudice. When discovery began, Interface could not reasonably have expected that there would be a jury trial, since Interface had explicitly waived its right to one in the Loan Agreement. When that waiver was drafted and agreed to, Interface was represented by the Paul Weiss firm. The Wasserman firm has conducted the litigation. One wonders what thought, if any, counsel who drafted Interface's responsive pleading gave to the contractual waiver when counsel included a jury demand. Hadn't counsel noticed the waiver in the Loan Agreement? Or did counsel hope that Bear Stearns' attorneys wouldn't notice the jury demand? In any event, Interface now appears to contend that as discovery and other litigation procedures went forward, and Bear Stearns did not move to strike the jury demand, Interface could reasonably infer Bear Stearns' unstated agreement to a jury trial, notwithstanding Interface's contractual waiver.

I cannot accept that argument. If a time came during pretrial litigation when counsel for

Interface indulged themselves in the assumption that Bear Stearns had by its silence on the subject acquiesced in a jury trial, that assumption was not justified, given the waiver Bear Stearns bargained for, obtained, and never stated was relinquished.

In any event, Interface will not be unfairly prejudiced by trying the case before a judge, as it contractually agreed to do. Jury trials and bench trials have common purposes. Both forms of trial seek to ascertain the facts and then give judgment in accordance with the governing law, are conducted in accordance with the same rules of procedure and evidence, and require thorough preparation by counsel. Interface may prefer, for reasons that are not stated, to present its case to a jury rather than a judge. But Interface bargained that right away, and holding Interface to its bargain works no unfair prejudice upon it.

One must also consider the legitimate interests of Bear Stearns. Presumably, when the parties entered into this elaborate package of related agreements everyone expected, or at least hoped, that affairs would progress in mutual amity and result in mutual profit. But Bear Stearns preferred that if disputes arose resulting in litigation, any trial would be conducted by a judge and not a jury. Bear Stearns bargained for and obtained from Interface what Bear Stearns evidently regarded as a benefit. Nothing in this record justifies depriving Bear Stearns of that benefit.[5]

_____

[5] In its briefs, Interface relies principally upon New York state court decisions to support its contentions of unreasonable delay and resulting prejudice. As noted in text, federal law governs the questions presented on this motion. In any event, the state court decisions Interface cites arose in different circumstances and would not require a different result. Interface argues that "[u]nder New York substantive law a party that does not timely assert a contractual jury trial waiver clause abandons its right to raise the issue later," Def.'s Opp'n Br. at 4, and cites for that proposition *Arkin v. Sig Heller Co.*, 99 N.Y.S.2d 175 (App. Div. 1st Dep't 1950); *Moskowitz v. Keith Sales Corp.*, 99 N.Y.S.2d 173 (Sup. Ct. 1948); and *Cantor v. 255 West 15th Holding Corp.*, 207 N.Y.S.2d 535 (App. Div. 1st Dep't 1960). As Judge Kram of this Court observed in *National Westminster Bank, U.S.A. v. Ross*, 130 B.R. 656, 668 (S.D.N.Y. 1991), *aff'd sub nom. Yaeger v. National Westminster*, 962 F.2d 1 (2d Cir. 1992) (table), during the course of her

## III. CONCLUSION

Bear Stearns did not delay unreasonably in moving to strike Interface's jury demand, and the passage of time between the jury demand and the motion to strike worked no unfair prejudice upon Interface. Bear Stearns' motion to strike Interface's jury demand is granted. The case will proceed as a bench trial.

The trial will begin on February 18, 2008, in Room 17-C, 500 Pearl Street. That will give sufficient time to resolve any remaining discovery issues and allow counsel to complete trial preparations.

---

opinion granting a motion to strike a jury demand, in each of these same New York cases "had the court granted the motion to strike the jury demand, the case would have been placed at the bottom of the non-jury calendar and plaintiff would have been compelled to wait until the case rose to the top of the non-jury calendar. The delay and resulting unfair prejudice to the plaintiff was at the heart of each of these decisions to deny motions to strike plaintiff's jury demand." No such circumstances of prejudice are present in the case at bar. Interface clings to its contention by arguing in its Sur-Reply Brief at 5 that subsequent to Judge Kram's opinion in *National Westminster Bank*, a state court decision, *Sapp v. Propellor Co.*, 784 N.Y.S.2d 532 (App. Div. 1st Dep't 2004), cited "the very same New York cases at issue here," including *Arkin* and *Moskowitz*. *Sapp* involved a lease of property. Defendants filed a jury demand on May 2, 2003. On January 21, 2004, the parties were advised that jury selection would begin on February 11, 2004. On that latter date, defendants made an oral application for leave to withdraw their jury demand. The trial court granted the application over plaintiffs' objection. Not surprisingly, the appellate division reversed, holding that under the N.Y. C.P.L.R. "defendants had no right to withdraw their jury demand without plaintiffs' consent," since defendants "waived the protection of that [lease's jury-waiver] clause by affirmatively demanding a jury trial and then failing to seek to withdraw the demand until nine months later," when jury selection was about to begin. 784 N.Y.S.2d at 533. That case bears no resemblance to this one. Bear Stearns is not seeking to withdraw its own jury demand, never having made one; it is moving to strike Interface's jury demand. To be sure, the appellate division in *Sapp* went on to say that "even a delay in moving to strike an adversary's jury demand may preclude a party from relying on a contractual waiver of the right to trial by jury," citing *inter alia Arkin* and *Moskowitz*. This *dicta* in a case so different from the one at bar would furnish no guidance on the present motion, even if state law governed the question, which it does not.

It is SO ORDERED.

Dated: New York, New York
      November 7, 2007

                             CHARLES S. HAIGHT, JR.
                    SENIOR UNITED STATES DISTRICT JUDGE

12